(11 Misc. Rep. 165.)

WATTENGEL v. SCHULTZ et al.

(Supreme Court, Special Term, Niagara County.  January 21, 1895.)

1. MORTGAGES — INSURANCE BY ADMINISTRATRIX OF MORTGAGOR — RIGHTS OF
MORTGAGEE.
   A mortgage executed by one S. and wife, and the bond secured thereby,
   covenanted that the parties of the first part would keep the buildings on
   the mortgaged premises insured, and assign the policies to the mortgagee,
   in default of which the mortgagee might insure, and include the cost in the
   mortgage debt. Policies were procured by S., but they did not refer to the
   mortgage, and were not assigned. They were canceled after the death of
   S., and his wife, who was appointed administratrix, procured other policies
   payable "to the estate of S." and "to S." The premiums were paid partly
   with the amount returned on the cancellation of the former policies, and
   partly with the wife's money. Held, that the mortgagee was entitled to the
   benefit of such insurance, as it was the wife's duty to insure for him both
   individually, because of her covenant in the mortgage, and as administra-
   trix of the mortgagor.

2. SAME—RIGHTS OF JUNIOR MORTGAGEE.
   Where premises are subject to a first mortgage, which requires the mort-
   gagor to insure the buildings thereon for the benefit of the mortgagee, and
   to a second mortgage, which does not contain such requirement, the in-
   surance, in case of loss, will be applied towards satisfying the first mort-
   gage, in order to exonerate the land in favor of the second mortgage.

Action by Andrew Wattengel against Mary Schultz, individually and as administratrix of Frederick Schultz, deceased, and others, to foreclose a mortgage.    Judgment for plaintiff.

Patten, Vroman & Fish, for plaintiff.

Simpson, Harrington & Premus, for defendant Mary Schultz.

Brown & Jeffery, for defendants administrators of Charles F. Worth.

W. J. Hutchinson, for defendant Thomas Cumpson.

WARD, J.    This action is brought to foreclose a bond and mortgage.    The bond was dated July 15, 1890, and given to secure to the plaintiff the payment of $1,000, five years from date, with semiannual interest, and was executed by Frederick Schultz and Charles F. Worth, and contained an insurance clause as follows:

"And it is also agreed by and between the parties to these presents that the said parties of the first part shall and will keep the buildings erected and to be erected upon the lands [covered by the mortgage] insured against loss or damage by fire, by solvent insurers, and in an amount approved by the party of the second part, and assign the policy and certificate thereof to the said party of the second part [the plaintiff], his heirs or assigns; and in default thereof it shall be lawful for the said party of the second part to effect such insurance, as mortgagee or otherwise, and the premium or premiums paid for effecting and continuing the same shall be a lien on said mortgaged premises, added to the amount secured by these presents, and payable on demand, with interest."

A mortgage of the same date was executed to the plaintiff by the said Frederick Schultz, and by his wife (the defendant Mary Schultz), to secure the payment of the bond, and contained the same insurance clause as in the bond.    The property covered by the mortgage was a lot in North Tonawanda, Niagara county, 50 feet front by 125 feet deep, and had two buildings thereon, one used as a residence and a grocery store, and the other as a store and saloon.    This mortgage was recorded.    Frederick Schultz got the buildings insured for $1,200, and died intestate, September 17, 1892, leaving the insurance in force.    The defendant Mary Schultz was appointed the administratrix of his estate, after which the companies issuing these policies, on account of labor troubles at Tonawanda, canceled those policies, or refused to continue them in force; and the administratrix procured insurance on the buildings in four other companies, two of which were made payable, in case of loss, "to the estate of Frederick Schultz," for $1,500, and covered the store and saloon, and the other two payable to "Frederick Schultz," for $500, and covered the dwelling house and grocery.    These four policies were all taken out at the same time, and the premium paid by the widow out of her own means, in part, and the residue out of the proceeds of prior insurance upon the property of the deceased.    Afterwards, and while the four policies were in force, the buildings were destroyed by fire, and the administratrix made proofs of loss, and the loss, after some controversy, was settled with the insurance companies at $908.32, which was received by her, and which she still retains.    The deceased did not assign the policies taken out by him to the plaintiff, nor was there any reference therein to the plaintiff's mortgage, nor did the

plaintiff avail himself of the right given him in the insurance clause in the mortgage to insure the buildings for his own benefit. Subsequent to the recording of this mortgage, and in August, 1891, Frederick Schultz and his wife executed another mortgage upon the same premises to the defendant Thomas Cumpson, to secure the payment of a bond given by them for the sum of $650, in two years, with interest. Nothing was paid on this bond, and there was no covenant in either the bond or mortgage for insurance of the building for the benefit of the mortgagee. Nothing was paid on the principal of the first mortgage, and there was a default in interest of $30, due sometime in January, 1894; and in June, 1894, this action was commenced to foreclose the plaintiff's bond and mortgage, and relief was also asked to have the lien of the mortgage declared upon the insurance moneys in the hands of the administratrix, and have the same applied upon plaintiff's mortgage. The deceased left some children, and they, with the widow and administratrix, were made parties. Charles F. Worth died before this action was commenced, and his administrators were made parties. The estate of the deceased Schultz was largely insolvent.

The administratrix, Mary Schultz, claims that the insurance money should be distributed among the general creditors of the deceased; the plaintiff sharing with them if there were a deficiency on the sale of the remaining real estate, which should be first sold, and the proceeds applied on the plaintiff's mortgage. The defendant Cumpson contends that the plaintiff has a lien as well on the moneys as on the land, and the money should first be applied to the plaintiff's mortgage. The administrators of Worth ask for an adjudication discharging the estate of Worth from the obligations of the bond, in suit, because Worth was a surety for Schultz, with the plaintiff's knowledge, and it was the plaintiff's duty, on the failure of Schultz to get the premises insured for the plaintiff's benefit, to avail himself of the right to do so, and his not doing so was such negligence on his part as to discharge the surety. These questions are interesting, and somewhat novel. The administratrix has money that represents the real estate destroyed, that was subject to the lien of the plaintiff's mortgage. As we have seen, the deceased, together with his wife, covenanted, as a part of the mortgage, to have and keep the buildings insured for the protection and security of the plaintiff. Although the wife had only an inchoate dower interest in the premises, she could still enter into a binding agreement of this character. Chapter 381 of the Laws of 1884 has so enlarged the powers of a married woman that she can make any contract that an unmarried woman can, except contracts directly with her husband, and her contract with third persons is valid, though executed jointly with her husband. In re Grove, 20 Abb. N. C. 164, and cases there cited. The husband's covenant to insure the premises, if not performed in his lifetime, can be enforced against his estate through his personal representatives, to the extent of his assets in their hands. Chamberlain v. Dunlop, 126 N. Y. 45, 52, 26 N. E. 966; Kernochan v. Murray, 111 N. Y. 306, 18 N. E. 868. In insuring a mortgage interest, it is not the debt secured by the mortgage that is insured, but the inter-

est of the mortgagee in the property upon which his security depends. Excelsior Fire Ins. Co. v. Royal Ins. Co., 55 N. Y. 343. And the proceeds of the insurance are to be distributed, when upon real estate, as real estate, and not as personal property. Wyman v. Wyman, 26 N. Y. 253; Wood, Ins. 863.

There is no question in the case between the insured and the insurer, but the question simply is, what shall be done with the money that is concededly the result of the destruction of a portion of the realty that was subject to the lien of the plaintiff's mortgage? In Parry v. Ashley, 3 Sim. 97, the owner of real estate took out a policy on a building, which was running at his death, and was renewed by his executrix, who was also a legatee and devisee of his real and personal estate, which was, however, charged with an annuity to his widow. The building was burned, and, on a bill by the annuitant, the money was ordered to be brought into court to await further directions; the vice chancellor saying that he thought it could not be considered as part of the testator's general personal estate, but that it was affected with a trust for the benefit of the parties interested in the real estate. This case is cited with approval in Herkimer v. Rice, 27 N. Y. 181. The insurance taken by deceased of $1,200, if continued to the time of the fire, would have inured, under the covenant to insure, to the benefit of the mortgagee, though there was no recognition of the covenant in the policies themselves, or assignments thereof to the plaintiff. Cromwell v. Insurance Co., 44 N. Y. 42. Dunlop v. Avery, 89 N. Y. 593; Wheeler v. Insurance Co., 101 U. S. 439. The administratrix had the right to execute the covenant of the deceased, and it was her duty to do so; and when she took out the four policies in the name of the deceased, and of his estate, the presumption is that she did it in the performance of that covenant, and as a continuation, to the extent thereof, of the insurance that had been effected by the deceased. Superadded to this is her own personal covenant to the same effect, which she is bound to perform; so that this presumption is in the line of her obligation, both as an individual and as an administratrix, and she cannot be permitted now to assert otherwise. Her paying of the portion of the premium out of her own means, and a portion out of the property of the estate, was consistent with this liability. Her claim, as a witness, that she obtained these insurances for the benefit of the general creditors of the deceased does not overcome this presumption. The equity of the plaintiff to this fund is superior to that of the general creditors of the estate, and constitutes a specific lien, which follows this fund into the hands of the administratrix, who holds it as a trustee for the satisfaction of the plaintiff's mortgage. Wheeler v. Insurance Co., 101 U. S. 439, and cases cited at page 442. The junior mortgage held by the defendant Cumpson does not contain a covenant for insurance, and this defendant does not claim a lien upon the money held by the administrators, and equity requires that the insurance should first be applied, after deducting the costs and expenses of the action, upon the plaintiff's bond and mortgage, before resort is had to the land upon which the junior mortgage is a lien. There is no force in the position of

the counsel for the administrators of Worth that, as a surety, he was discharged from the obligation of his bond by reason of the plaintiff's negligence, because no such negligence is shown as effects such a discharge. The principal sum secured by the plaintiff's mortgage is not yet due, the only default being in the payment of interest. The mortgaged premises are so circumstanced that a sale of the whole land will be most beneficial to the parties, and, as the insurance money will not be sufficient to pay the plaintiff's mortgage, costs and expenses of the action, resort must be had to the land, which must be sold, and which the court has power to order, under section 1637 of the Code of Civil Procedure. And by that section the proceeds of the sale may be applied in satisfaction of the whole sum secured by the mortgage, with such rebate of interest as justice requires. As the amount secured by the mortgage is upon interest when the application is made, interest will be allowed up to that time. I can see no difficulty in applying the insurance moneys, after deducting the costs and expenses of the action, upon the principal of the plaintiff's mortgage, after deducting accrued interest. Interest will then cease upon the principal sum applied, and the sale of the land can proceed to secure the balance unpaid. The plaintiff must have judgment as indicated by these conclusions, with costs. Costs are also allowed the defendant Cumpson, these costs to be taken from the insurance money. Costs are not allowed for or against any other of the parties to the action, but the guardian for the infant defendant may have a suitable allowance for his services and disbursements upon filing an affidavit as to what they are, to be paid out of the insurance money.