H. W. MILLER, Appellant, v. H. M. MORINE, Appellee.

**Landlord and tenant:** LEASE: VARIANCE BY PAROL. Parol evidence is
1  not admissible to vary the terms of a written instrument. Thus where a written lease was free from ambiguity and recited that in consideration of the rental to be paid the lessor was to perform certain covenants, evidence of a parol agreement that the lessor for the same consideration was to perform a different covenant not expressed in the writing was not admissible.

**Same:** ORAL AGREEMENT: PLEADING. The pleading of a contract as
2  partly oral and partly in writing will not authorize oral proof of another and different covenant at variance with the writing.

**Appeal:** ERRORS CURED BY VERDICT. Errors growing out of an affirma-
tive defense to an action, upon which the jury found specially in
favor of the plaintiff, were non-prejudicial to plaintiff.

*Appeal from Guthrie District Court.*—HON. W. H. FAHEY,
Judge.

THURSDAY, NOVEMBER 5, 1914.

ACTION to recover an installment of rent, under a written
lease and a rent note. The defendant admitted the execution
of the writing. He pleaded an affirmative defense and several
counts of a counterclaim. He was successful as to one count,
and the plaintiff's recovery was reduced accordingly by the
verdict. From a judgment in his favor for the reduced
amount, the plaintiff has appealed.

*Milligan & Moore* and *Howard & Sayers,* for appellant.

*Weeks, Vincent & Weeks,* for appellee.

EVANS, J.—The plaintiff leased to the defendant by writ-
ten lease his farm of six hundred and forty acres located in
Guthrie county, for a term of five years, beginning March 1,
1909, and ending March 1, 1914, for an agreed rental of $2,000
per year. The rent for each year was payable $600 on October
1st, and $1,400 on February 15th following. The defendant
occupied the premises only to March 1, 1913; on such date he
relinquished the premises for a consideration, the plaintiff hav-
ing sold the farm to a purchaser. This action was brought
for the last installment of the 1912 rent, which became due
February 15, 1913. The defendant received from plaintiff
$800 for the surrender of his lease. He pleaded as an affirma-
tive defense herein that it was agreed that, in addition to such
$800 he should receive also the $1,400 note, now in suit. He
pleaded a counterclaim for damages in various counts, based
upon various alleged breaches of contract, and totaling about

$13,000.  In one count he alleged that prior to the execution of the written lease the plaintiff orally agreed to tile drain the leased premises, and that he thereafter failed to do so to the damage of the defendant in the sum of $6,000.  This was the only count for damages submitted to the jury.  The jury rendered a verdict for the plaintiff for $303.  It is manifest, therefore, that the jury allowed a recovery on defendant's counterclaim to the amount of about $1,100.

Forty-six assignments of error are presented to us.

I. The one question in the case, however, is, was it com-

1. LANDLORD AND TENANT : lease : variance by parol.

petent for the defendant to prove the alleged oral agreement or promise of the plaintiff, and thus ingraft it upon the written lease?

The defendant testified over the objections of the plaintiff as follows:

A. And I told him I could not rent a farm of that kind very well, because it was quite a proposition in the shape it was in.  It was pretty near worthless.  'Well,' he says, 'I will tile it out for you in good shape.' . . . A. I asked Mr. Miller then what he wanted for the place, and he told me that he wanted $2,000 a year, and I says to him, 'That is cheap enough for it.'  'Well,' he says, 'I can get more for it, but I don't want to rent it to everybody.'

He also testified that the oral promise to tile the land was repeated .at and just prior to the execution of the written lease.  This evidence was admitted by the trial court as tending to support the allegations of the answer that the contract of lease was partly oral and partly in writing, and on the theory that it rested with the jury to say whether such contract was partly oral and partly in writing.  The written lease was in ordinary form, and was complete in its terms, and was free from ambiguity.  It recited the mutual undertakings of the parties, and purported to set forth the mutual considerations of the contract.

The theory of the defendant is that the additional contract shown by parol was not in any manner inconsistent with

the written lease, and that it did not therefore alter or vary it. The question is quite settled to the contrary by our previous cases. *Kelley v. C., M. & St. P. Ry. Co.*, 93 Iowa, 436; *Lerch v. Sioux City Times Co.*, 91 Iowa, 750.

Under the written lease the $2,000 rental was the consideration which the defendant agreed to pay for plaintiff's performance of the covenants of the written lease. Under the oral agreement an additional covenant was laid upon the plaintiff for the same consideration, $2,000. Such an increase of the burden of obligation of the contract upon the plaintiff, and of the benefit thereof upon the defendant, was necessarily an alteration of the contract, as set forth in the written lease.

The precise question was involved in the case above cited. In the *Kelley* case it was said:

The contract of lease is perfect in all its parts. . . . There is nothing uncertain or ambiguous in the lease, and nothing to indicate that the parties intended anything further to be done by the defendant than is stated in the lease itself. . . . The consideration for the benefit derived is expressed in the lease, and is no more subject to parol modification than any other condition therein contained. . . . He cannot be allowed to prove other and different considerations from those stated in the lease, nor enlarge upon its terms by parol testimony. . . . The law will not allow that an agreement in such case may rest partly in writing and partly in parol. So that it is equally inadmissible to add to, take from, or specifically change the terms of a written agreement by parol.

In the *Lerch* case, *supra,* the defendants sought to prove by parol that the landlord had agreed to put steam heat in the leased building. Defendant was holding under a written lease which contained no such provision, but was silent thereon. The parol evidence was held inadmissible. It was said in the opinion:

The pleading is merely of an executory agreement, and breach of it. To permit it to be proven would be to violate the well-recognized rule that parol evidence is not admissible to alter or vary a written contract. Its effect would be to

ingraft onto the contract a new provision, foreign to any of the terms.

We need not cite the multitude of cases which announce the general rule excluding parol evidence. Special attention is directed to the cases above cited because they apply the rule specifically to the mutual considerations of a written lease, and are directly decisive of the question here presented.

It is urged by the defendant that there was no pleading in the cited cases to the effect that the contract was partly oral and partly in writing, whereas the defendant in the case at bar has expressly pleaded that the contract of lease was partly oral and partly in writing.

2. SAME: oral agreement: pleading.

But it is no more competent for a party to plead a contract as partly oral and partly in writing than it is to prove it by parol, when the oral part is inconsistent with the written, or ingrafts new undertakings or covenants thereto. This proposition was emphasized in the *Kelley* case, *supra*, and also in *Kelsey v. Casualty Co.*, 131 Iowa, 207. If the door could be opened to parol evidence, to vary a written contract, by simply pleading that the contract was partly in writing and partly oral, it would be a door that could never be closed. The practical effect of such a rule would be to wholly destroy reliance upon written contracts. All would become open to modification by the revival and substitution of antecedent negotiations.

Appellee cites for our consideration a number of our cases wherein we have held parol evidence to be admissible in the presence of written instruments. They all deal with exceptions to the general rule. Generally speaking, such exceptions arise as a circumvention to fraud in some form, either as to the execution or as to the delivery of the instrument, or where the written contract is incomplete upon its face or ambiguous in its terms, or the oral agreement is independent and collateral and rests upon its own mutual considerations. None of such exceptions are involved in the

case at bar. No fraud is pleaded, and no approach to fraud is shown in the evidence.

It appeared from the testimony of defendant's own witnesses that the mutual considerations of the written lease were substantially equal. Their testimony showed the rental value of the farm in its actual condition to be from $3 to $3.50 per acre. It further appeared from their testimony that it would have been worth from $5 to $7 per acre if it had been tiled. The defendant's claim for damages is based and measured by the difference in these valuations, amounting to $1,500 per year for four years. It is true that he himself testified that the farm in its actual condition was worth only $1,500 per year, but in three counts of his counterclaim he averred its actual worth to be $2,000. He testified that it would have been worth $3,000 if properly tiled. That the farm was a valuable and well-improved farm is undisputed. The plaintiff had lived upon it for many years preceding the occupancy of the defendant. One of the defendant's witnesses on cross-examination described it as follows:

It was a very well improved farm, one of the best in the township, a large amount of buildings.

.Another testified on cross-examination as follows:

I join Mr. Miller's farm on the north; have lived there since '81, except one year; the improvements are all right; the farm is well fenced; do not know amount of tiling on place; I bought a piece of land adjoining Miller two years ago and paid $109 per acre for it; I understand Miller sold for $125 per acre; I do not know of any ·farm land worth $125 per acre in Richland township that could have been rented during that term for $3 per acre; I think probably one-fourth of the Miller farm was in grass when Morine took it; there may have been more; probably one-fourth of the grass was tame grass.

It is undisputed that the defendant raised large crops upon the farm, except for the first year. For that year the plaintiff voluntarily remitted $500 of his rent. The oral evidence actually introduced, therefore, only confirms the equal-

ity of consideration in the terms of the written lease. The defendant was in no manner overreached; nor is there anything in the record that should appeal to the ingenuity of the court as for the foiling of a fraud. Taking the most favorable view of the defendant's case, as he made it, it has little margin to save it from being unconscionable. We hold that the evidence of the alleged parol agreement was inadmissible. It follows that the trial court should have dismissed the counterclaim.

II. The defendant pleaded as an affirmative defense that in consideration of his surrender of the lease on March 1, 1913, it was agreed that he should receive the sum of $800, and the surrender of the note in suit. The plaintiff denied this agreement, and averred that the defendant agreed to surrender the premises for $800. This agreement was also in writing, and the defendant's receipt in settlement thereof was in writing. But the defendant pleaded that this agreement also was partly in writing and partly oral. The alleged oral agreement was that the note in suit was to be surrendered, and the defendant so testified. Several assignments of error are laid and argued on this branch of the case. Appellant's counsel seem to have overlooked the fact that the special finding of the jury was in their favor as to this defense. This favorable verdict left them no ground of complaint; the errors, if any, being necessarily nonprejudicial. *Marks v. Haas,* 147 Iowa, 740.

3. APPEAL: errors cured by verdict.

For the reason indicated, the judgment below is reversed. —*Reversed* and *Remanded.*

LADD, C. J., and WEAVER, GAYNOR, and PRESTON, JJ., concurring.